UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 19-20092-CIV-MORENO

DARRIAN WASHINGTON,

    Plaintiff,

vs.

MIAMI-DADE COUNTY and HOWARD
ROSEN,

    Defendants.
_____/

## ORDER GRANTING MOTIONS TO DISMISS

Plaintiff, Darrian Washington, a Miami-Dade police officer files this case under 42 U.S.C. § 1983 for defamation against Howard Rosen, the Deputy Chief of Special Prosecutions for the Miami-Dade State Attorney. Plaintiff is also suing Miami-Dade County under the Florida Law Enforcement Officers' Bill of Rights and the Florida Civil Rights Act. The Court finds that Plaintiff fails to state a federal § 1983 claim against Howard Rosen because his allegations are insufficient to establish the elements for a common-law defamation claim and a constitutional injury flowing from Defendant Rosen's statements. In addition, the Court finds that Howard Rosen has qualified immunity for statements made in his discretionary authority, which do not violate clearly established constitutional law. Finally, the Court grants the County's motion to dismiss the Florida Law Enforcement Officers' Bill of Rights claim and the Plaintiff's demands for prejudgment interest and punitive damages under the Florida Civil Rights Act.

THIS CAUSE came before the Court upon Defendant Howard Rosen's Motion to Dismiss **(D.E. 28)**, filed on **June 5, 2019** and Defendant Miami-Dade County's Motion to Dismiss **(D.E. 29)** filed on **June 6, 2019**.

THE COURT has considered the motions, the response to Defendant Howard Rosen's motion to dismiss, the pertinent portions of the record, and being otherwise fully advised in the premises, it is

**ADJUDGED** that the Defendant Rosen's motion to dismiss is GRANTED because Plaintiff fails to state a defamation claim under 42 U.S.C. § 1983 and Defendant has qualified immunity. Based on the Court's finding that Defendant Rosen is entitled to qualified immunity and because this is the Plaintiff's Second Amended Complaint, the Court declines to allow Plaintiff leave to amend his claims against Defendant Rosen. *Lomax v. Diaz*, 390 F. App'x 900, 902 (11th Cir. 2010); *see also Cita Tr. Co. AG v. Fifth Third Bank*, 879 F.3d 1151, 1157 (11th Cir. 2018) (stating that imbedding a request to amend in an opposition memorandum is insufficient to properly request leave). It is also

**ADJUDGED** that Miami-Dade County's motion is GRANTED and the claims against the County are DISMISSED without prejudice. The Court notes that Plaintiff did not file a response to the motion to dismiss, filed on June 6, 2019, and the time for doing so has passed. Southern District of Florida Local Rule 7.1(c) allows the Court to grant motions by default, when a party fails to file an opposition memorandum. In any event, the Court examines in this order the claims against Miami-Dade County. To the extent, there are any viable state law claims against the County, the Court declines to exercise pendent jurisdiction.

## I. Background

Plaintiff, Darrian Washington, a Miami-Dade police officer, filed this case against Defendant Howard Rosen and Miami-Dade County. In his Second Amended Complaint, Plaintiff sues Howard Rosen, the Deputy Chief of Special Prosecutions for the Miami-Dade State Attorney, under 42 U.S.C. § 1983. The other three counts are state law claims against Miami-Dade County for violations of the Florida Law Enforcement Officers' Bill of Rights and the Florida Civil Rights Act.

Plaintiff is an African-American male, who was assigned to the Miami-Dade Police Department's Narcotics Bureau. At the time, the Department was investigating the Narcotics Bureau following instances of stolen money from crime scenes. Following a sting operation where monies went missing, the Miami-Dade Police Department arrested Plaintiff on February 25, 2016 along with other members of his squad. The Department released Plaintiff, but eventually reassigned and relegated him to a Patrol Officer position in the highest crime district in the County. He claims the transfer was a demotion based on unlawful discrimination due to his race. He also claims he was denied the opportunity to work overtime shifts. His claims against the County stem from those employment decisions.

The federal 42 U.S.C. § 1983 claim is for defamation against Defendant Howard Rosen, the Deputy Chief of Special Prosecutions for the Miami-Dade State Attorney. The Second Amended Complaint alleges that Rosen had "operational management of the joint investigation" into Plaintiff and other officers within the Narcotics Bureau. Plaintiff asserts that Rosen attended a roll call meeting at the Miami-Dade Police Department, where 40 people were present. Before the meeting took place, the Miami-Dade State Attorney had already decided not to prosecute Plaintiff in connection with the sting operation, which resulted in his arrest. Throughout the

3

meeting, Rosen referred to Plaintiff as the "officer that immediately invoked his rights upon his arrest." The allegations are that Rosen stated: "[t]he money had been counted and impounded by a particular officer whose name I'm not going to mention, . . . but it's the same officer that invoked his rights. You might . . . have heard who it is . . . throughout the rumor mill. . . .. [T]here's no allegation of him stealing any money, but the bottom line is he impounded the dope, he impounded the money. There was a serious credibility issue with him, so we can't file the case." The Second Amended Complaint adds that Rosen stated in the meeting that "the officer who invoked his rights" stole the money from a crime scene two days prior to the undercover operation. Rosen added that he "believed" Plaintiff stole the money because he had a lot of cash on him the day of the sting operation. The allegations also state that Rosen stated he heard Plaintiff's jailhouse call to family and based on that, he had no doubt that Plaintiff stole money from the scene.

Defendants filed motions to dismiss. Defendant Rosen argues the Plaintiff fails to state a claim under 42 U.S.C. § 1983 for defamation and Defendant Miami-Dade County argues that Plaintiff fails to state a claim under the Florida Law Enforcement Officers' Bill of Rights and the Florida Civil Rights Act.

## II. Legal Standard

"To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions," instead plaintiffs must "allege some specific factual basis for those conclusions or face dismissal of their claims." *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1263 (11th Cir. 2004). When ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's well-pleaded facts as true. *See St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 953 (11th Cir. 1986). This tenet, however, does not apply

4

to legal conclusions. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Moreover, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 1950. Those "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). In short, the complaint must not merely allege a misconduct, but must demonstrate that the pleader is entitled to relief. *See Iqbal*, 129 S. Ct. at 1950.

### III. Legal Analysis

*A. Count 1: 42 U.S.C. § 1983 Claim against Deputy State Attorney Howard Rosen*

Count 1 is a defamation claim under 42 U.S.C. § 1983 against Defendant, Howard Rosen, Deputy Chief of Special Prosecutions for the Miami-Dade State Attorney. The claim against Rosen stems from statements he made at a pre-shift roll call meeting at the Miami-Dade Narcotics Bureau on May 6, 2016. Prior to that meeting, the State Attorney decided she would not be filing criminal charges against Plaintiff. Plaintiff's § 1983 claim asserts that despite the State Attorney's decision not to prosecute Plaintiff, Rosen advised approximately 40 members of the Narcotics Bureau, that Plaintiff immediately invoked his rights when arrested. He also stated that he heard Plaintiff's jailhouse call and that based on that conversation, he assessed that Plaintiff had stolen money from crime scenes. Rosen also called into question Plaintiff's credibility as a witness. These statements form the basis of Plaintiff's defamation claim against Rosen under 42 U.S.C. § 1983.

*a. Failure to State a Common Law Defamation Claim under Florida law*

To state a claim under § 1983 based on statements by government officials, a plaintiff must first allege a common law defamation claim and then allege a constitutional injury flowing from the defamatory statement. *Rehberg v. Paulk*, 611 F.3d 828, 851-52 (11th Cir. 2010). Injury to

5

reputation alone does not constitute a deprivation of a liberty or property interest protected under the Fourteenth Amendment. *Id.* (citing *Behrens v. Regier*, 422 F.3d 1255, 1259 (11th Cir. 2005). "Damages to a plaintiff's reputation 'are only recoverable in a section 1983 action if those damages were incurred as a result of government action significantly altering the plaintiff's constitutionally recognized legal rights.'" *Id.* (quoting *Cypress Ins. Co. v. Clark*, 144 F.3d 1435, 1438 (11th Cir. 1998)). This is known as the stigma-plus test and requires the plaintiff to "show both a valid defamation claim (the stigma) and 'the violation of some more tangible interest' (the plus)." *Id.* (quoting *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1302 (11th Cir. 2001) and *Behrens*, 422 F.3d at 1260).

First, Plaintiff must allege the elements of a defamation claim under Florida law. *Id.* (stating stigma-plus test requires "allegations stating a common-law defamation claim."). Those elements are: "(1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory." *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008). The publication prong is not met as a matter of law where the communications are between governmental employees and agencies. *Alvarez v. Ridge*, No. 03-20049, 2004 WL 7331011, at *4 (S.D. Fla. Mar. 30, 2004). In addition, courts have held that opinions with no probably false connotations cannot support a common-law defamation claim. *Hamze v. Cummings*, 652 F. App'x 876, 881 (11th Cir. 2016) (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990); *Keller v. Miami Herald Publ'g Co.*, 778 F.2d 711, 714-15 (11th Cir. 1985) (applying Florida law)).[1]

---

[1] Rosen's statements appear to articulate his opinion that Officer Washington committed a crime, but the evidence is insufficient to prosecute. The Court need not decide the issue, however, because the publication prong is not met.

Plaintiff does not specifically respond to Rosen's argument that the publication prong is not met because he made the statements in a meeting with law enforcement. Rather, Plaintiff generally argues that because Rosen made the statements to 40 officers at a meeting, that is sufficient to meet the publication prong. The intragovernmental dissemination of information, however, does not meet the publication prong. *Alvarez*, 2004 WL 7331011, at *4 (citing *Learned v. Bellevue*, 860 F.2d 928, 933 (9th Cir. 1988) (remarks uttered to employees of appropriate department do not satisfy the publication requirement). In addition, Florida law states that "[a] common law claim for defamation requires the *unprivileged* publication (to a third party)." *Mile Marker, Inc. v. Petersen Publ'g, LLC*, 811 So. 2d 841, 845 (Fla. 4th DCA 2002) (emphasis added). The communication, here, between Rosen and law enforcement is not an "unprivileged publication" because the parties have mutuality of purpose under Florida law. *Int'l Sec. Mgm't Grp., Inc. v. Rolland*, 271 So. 3d 33, 45 (Fla. 3d DCA 2018) (holding communication is privileged and not subject to a defamation claim where the speaker and listener have mutuality of purpose, such as in the law enforcement context). Accordingly, the Court finds that Plaintiff fails to state a claim for defamation under Florida law because the factual allegations do not establish the elements.[2]

### 1. Absolute Immunity under Florida Law

Even if the Plaintiff's allegations established each element of a common-law defamation claim, the question then arises as to whether Rosen has absolute immunity for his statements to law enforcement. Rosen argues that Florida law blankets him with absolute immunity, which expansively protects statements made by public officials "in connection with the performance of

---

[2] The Court also notes that to the extent that Rosen said that Plaintiff was the officer that "invoked his rights" that information is true. A false statement about another is a required element of defamation. *Kieffer v. Atheists of Fla., Inc.*, 269 So. 3d 656, 659 (Fla. 2d DCA 2019).

7

the duties and responsibilities of their office." *McNayr v. Kelly*, 184 So. 2d 428, 433 (Fla. 1966); *Hauser v. Urchisin*, 231 So. 2d 6, 8 (Fla. 1970) ("The public interest requires that statements made by officials . . . in connection with their official duties be absolutely privileged."). Florida law has broadly defined "scope of office" to encompass all matters which a public official is authorized to perform. *Mueller v. The Florida Bar*, 390 So. 2d 449, 451 (Fla. 4th DCA 1980). Given this broad interpretation, any statements made by a public employee "within the orbit of his responsibilities" are immune. *See Florida State Univ. Bd. of Trustees v. Monk*, 68 So. 3d 316, 319 (Fla. 1st DCA 2011); *Goetz v. Noble*, 652 So. 2d 1203, 1205 (Fla. 4th DCA 1995).

Plaintiff argues that Rosen is not entitled to absolute immunity because there are federal cases that distinguish prosecutors' actions to determine which are entitled to absolute immunity and which are not. Plaintiff advocates for this Court to apply a "functional approach" test looking at the nature of the action performed, as opposed to the actor. *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993). This argument misses the mark because to state a § 1983 claim for defamation, the Plaintiff must first be able to allege a common law claim for defamation under Florida law, irrespective of federal immunity law establishing the functional approach test. Florida cases applying Florida law do not apply the functional approach test to decide a prosecutor's absolute immunity. Given Florida's expansive rule granting public officials, such as Rosen, absolute immunity for statements made in his scope of office, Plaintiff is unable to state a defamation claim under Florida law. Certainly, Rosen's statements in a meeting with law enforcement fall within the ambit of his scope of work. Put another way, if the Plaintiff simply filed a defamation claim in a Florida court against Rosen, it would most certainly be dismissed because a Florida court

would find his comments absolutely immune, especially given he made them in a meeting with law enforcement.[3]

### b. Failure to allege a Constitutional Injury

Assuming Plaintiff could state a defamation claim under Florida law, Plaintiff's Second Amended Complaint would need to identify a constitutional injury flowing from the alleged defamatory statements to state an actionable § 1983 claim. *Rehberg*, 611 F.3d at 851. Plaintiff's claim here is that Rosen's statement to law enforcement that Plaintiff committed a crime deprived him of a liberty interest.

In this case, the Plaintiff's arrest predated Rosen's statements by two months. A § 1983 defamation claim requires the Plaintiff to establish an affirmative causal connection between the statements and the alleged constitutional deprivation. *Troupe v. Sarasota Cnty., Fla.*, 419 F.3d 1160, 1165 (11th Cir. 2005) ("A § 1983 claim requires proof of an affirmative causal connection between the defendant's acts or omissions and the alleged constitutional deprivation."). Obviously, Rosen's statement, after-the-fact, could not have caused the Plaintiff's arrest two months earlier. Because Rosen's statement did not trigger Plaintiff's arrest, the Court cannot find that the arrest was a constitutional injury causally connected to Rosen's statements.

To the extent Plaintiff asserts reputational injury, *Rehberg* establishes that is not actionable. *Rehberg*, 611 F.3d at 851-52. The Second Amended Complaint references an inter-departmental transfer, denial of overtime shifts, and a loss of credibility, which are insufficient to trigger a violation of "constitutionally recognized legal rights." *Id.* ("The 'stigma-plus' test requires not

---

[3] The "functional approach" would be appropriately applied in the event the Plaintiff could state a common-law defamation claim under Florida law, which is the first component in the stigma-plus test. If Plaintiff could state a common law defamation claim, then the Court would determine if a constitutional injury flowed from that claim. In that context, the Court would then determine if the prosecutor had absolute immunity as a defense under federal law.

9

only allegations stating a common-law defamation claim, but also an additional constitutional injury, tied to a previously recognized constitutional property or liberty interest, flowing from the defamation."); *see also Behrens*, 422 F.3d at 1263, n.14 (citing *Cannon*, 250 F.3d at 1303) ("[I]n this circuit a 'discharge [from employment] or more' is required in order to satisfy the 'plus' element of the stigma-plus test.").

### c. *Immunity under federal law*

Even if Plaintiff could state a claim for defamation under Florida law and establish a constitutional injury flowing from Rosen's statements, the Defendant argues that he also has absolute and qualified immunity from a § 1983 claim. *Buckley*, 509 U.S. at 268-69. As noted, *infra*, absolute prosecutorial immunity is function related under federal law. A prosecutor is immune from liability under § 1983 for his actions "in initiating a prosecution and in presenting the State's case," and for actions that are "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976). That includes "actions preliminary to the initiation of a prosecution and actions apart from the courtroom." *Mikko v. City of Atlanta, Ga.*, 857 F.3d 1136, 1143 (11th Cir. 2017) (quoting *Buckley*, 509 U.S. at 272). *Imbler* recognized that prosecutors often engage in preliminary actions outside the courtroom, such as obtaining witness testimony, and are entitled to absolute immunity in that regard. The question here is whether statements made regarding the decision not to prosecute after weighing evidence and witness credibility should be considered quasi-judicial or administrative. Rosen also stated that Plaintiff stole money from the crime scenes and that he had a lot of cash on him at the time of the arrest. Plaintiff argues Rosen's statements are administrative, and therefore, he is stripped of his absolute immunity under federal law on this § 1983 claim.

Undoubtedly, the State Attorney's decision not to prosecute the Plaintiff is protected by absolute immunity. *Mikko*, 857 F.3d at 1143. The parties dispute whether the communication of that decision and the prosecutor's statement that Plaintiff committed the crime is also shielded by absolute immunity. The Eleventh Circuit cautioned in *Mikko* that for absolute immunity to shield the prosecutor, the conduct in question must be connected in a specific way to his role as a trial advocate. *Id.* The Court finds that Rosen's statements are not protected by absolute immunity, because the statements were not taken in his role as a trial advocate. *See Buckley*, 509 U.S. at 276 (citing *Burns v. Reed*, 500 U.S. 478, 495 (1991) ("Indeed, it is incongruous to allow prosecutors to be absolutely immune from liability for giving advice to the police, but to allow police officers only qualified immunity for following the advice . . . Almost any action by a prosecutor, . . . could be said to be in some way related to the ultimate decision whether to prosecute, but we have never indicated that absolute immunity is that expansive.").

Although absolute immunity would not apply in this context where the statements appear administrative in nature, the Court agrees with Rosen's argument that he nevertheless is protected by qualified immunity. "To be entitled to qualified immunity, an official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Mikko*, 857 F.3d at 1143-44. In *Mikko*, the Eleventh Circuit stated that "[a] prosecutor's most basic duty is to prosecute cases in his jurisdiction on behalf of the State. Related to that duty, prosecutors may also communicate with other law enforcement agencies, officials, or employees about current or potential prosecutions, and about current or potential witnesses for the cases that may be prosecuted." *Id. Mikko* therefore requires this Court to find that Rosen was acting within his discretionary authority as there was an ongoing criminal investigation. Rosen's communication with law enforcement explaining a decision not to prosecute the Plaintiff and potential concerns

with calling Plaintiff as a witness clearly fall within the prosecutor's discretionary authority. The Court does not find that Rosen acted outside of his discretionary authority such as would strip him of qualified immunity.

Finally, even if Rosen was acting beyond his discretionary authority, the Court does not find that Plaintiff's allegations establish a violation of a clearly established constitutional right. As previously explained, Plaintiff does not show a constitutional injury flowing from Rosen's statements. Plaintiff asserts that his reputational harm, his interdepartmental transfer, and his inability to work overtime shifts, amount to a deprivation of a constitutionally protected liberty interest without due process. *Howe v. Baker*, 796 F.2d 1355, 1360 (11th Cir. 1986) (applying a stigma-plus test to a reputational loss and finding no violation of a constitutional right); *Behrens*, 422 F.3d at 1263, n.14.

Plaintiff has not pointed to precedent putting Rosen on notice that his actions violate a clearly established constitutional right. Certainly, Rosen was not on notice that he was violating Plaintiff's clearly established constitutional rights when he spoke at a meeting with law enforcement about Plaintiff's potential role in a crime, the decision not to prosecute him, and the credibility concerns arising from calling Plaintiff as a witness in other criminal prosecutions. *See Holden v. Sticher*, 427 F. Appx 749, 752 (11th Cir. 2019) (granting prosecutor qualified immunity for giving advice to police officer on filling out arrest affidavit); *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1281 (11th Cir. 2002) (granting prosecutor qualified immunity for actions taken in his investigator's role). Accordingly, the Court finds that Rosen is qualifiedly immune from Plaintiff's § 1983 claim.

  B. *Count 2: Florida Law Enforcement Officers' Bill of Rights Claim*

Count 2 of the Second Amended Complaint is a claim against Miami-Dade County for a violation of the Florida Law Enforcement Officers' Bill of Rights, § 112.532, Fla. Stat. The statute

affords law enforcement officers and correctional officers various rights when the officer is subject to an investigation by his agency. Section 112.532(3) provides that a law enforcement officer, such as Plaintiff, may bring a claim against any person for abridgment of the officer's civil rights arising out of the officer's performance of his official duties. In his claim, Plaintiff asserts that as a "direct and proximate result of Defendant Miami-Dade County's actions, Plaintiff has suffered and will continue to suffer substantial economic damages." Courts have found the statute does not create a private right of action for money damages. *Fiedor v. Florida Dep't of Fin. Servs.*, No. 18-cv-191, 2018 WL 6495194, *2 (N.D. Fla. Sept. 4, 2018); *Kamenesh v. City of Miami*, 772 F. Supp. 583, 593 (S.D. Fla. 2001) (abrogated on other grounds) (stating the statute merely memorializes the right to sue but does not create a cause of action). In *Bailey v. Bd. of County Comm'rs*, 659 So. 2d 295, 300 (Fla. 1st DCA 1994), the court analyzed whether the statute created a cause of action for money damages. Finding that the sole statutory remedy for a violation of § 112.532 was contained in § 112.534, the court found the only available remedy was injunctive. The *Bailey* court dismissed the claim for money damages under the Florida Law Enforcement Officers' Bill of Rights. *See also City of Miami v. Cosgrove*, 516 So. 2d 1125 (Fla. 3d DCA 1987). Accordingly, this case law precludes Plaintiff's claim for money damages under the statute against Defendant Miami-Dade County. The Court notes that Plaintiff has not responded to Miami-Dade County's motion to dismiss, which provides grounds for granting the dismissal of this claim by default.

*C. Florida Civil Rights Act Claims against Miami-Dade County*

Counts 3 and 4 are claims for race discrimination and retaliation under the Florida Civil Rights Act. Defendant moves to dismiss the demand for prejudgment interest and punitive damages. Again, Plaintiff has not filed a response to this motion and the Court agrees with Defendant's position that the statute does not allow a right of recovery for prejudgment interest

and punitive damages against the County. *Allan v. City of Leesburg*, No. 08-cv-176, 2009 WL 10670463, *6 (N.D. Fla. Oct. 16, 2009) (striking Plaintiff's demand for punitive damages and prejudgment interest in Florida Civil Rights Act claims). Should Plaintiff choose to amend his claims under the Florida Civil Rights Act, he shall not include those demands in his state court complaint. This Court declines to exercise pendent jurisdiction over any such claims.

DONE AND ORDERED in Chambers at Miami, Florida, this 23rd of December 2019.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record